# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RONALD L. E., | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) No. 20 C 5716 ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) Magistrate Judge Finnegan ) ) |
|     Defendant. | ) ) |

## ORDER

Plaintiff Ronald L. E. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court affirms the ALJ's decision.

## BACKGROUND

Plaintiff applied for SSI on June 8, 2018, alleging that he has been disabled since June 1, 2013 due to rods in his leg, a bump on the head, and asthma. (R. 156, 176). Plaintiff subsequently amended the alleged disability onset date to May 10, 2018. (R. 227-29). Born in 1970, Plaintiff was 47 years old at the time of the application and was

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

at all times a younger person (under age 50). (R. 156); 20 C.F.R. § 416.963(c). He has an 11th grade education and lives with his mother. (R. 39, 177). In July 2013, Plaintiff was injured in a motor vehicle accident that caused a left tibial plateau fracture. (R. 24, 232). He underwent a left tibial plateau open reduction internal fixation, open lateral meniscus repair, and bone grafting to the plateau. (*Id*.). Shortly after the surgery, Plaintiff was incarcerated for approximately four years until early 2018.[2] (R. 24, 251-422). He has no past relevant employment. (R. 40, 177).

The Social Security Administration denied Plaintiff's application initially on August 7, 2018, and again upon reconsideration on October 9, 2018. (R. 78-90). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Carla Suffi (the "ALJ") on October 7, 2019. (R. 34). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Tobey C. Andre (the "VE"). (R. 36-56, 217-18). On November 29, 2019, the ALJ found that Plaintiff's (1) left knee degenerative joint disease and osteopenia, status post July 2013 fracture with open reduction internal fixation ("ORIF") with two rods, and (2) asthma, are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21-22). After reviewing the evidence in detail, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work involving: occasional balancing, stooping, and climbing of ramps and stairs; no kneeling, crouching, crawling, or climbing of ladders, ropes, or scaffolds; no using the left leg for operation of foot controls; no working in environments with exposure to

---

[2] Plaintiff testified that in connection with the motor vehicle accident, authorities found illegal drugs in the car in which he was riding, though he denied that the drugs belonged to him or that he was aware of them. (R. 40-42).

concentrated pulmonary irritants such as dusts, fumes, odors, and gases; and no exposure to extraordinary hazards such as unprotected heights, dangerous unguarded moving mechanical parts, or grossly uneven surfaces. (R. 22-23). Plaintiff must also be able to use a single cane at times for ambulation. (R. 23).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could perform a significant number of jobs available in the national economy, including assembler, loader, and order clerk. (R. 26-27). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the May 10, 2018 alleged disability onset date through the date of the decision. (R. 27). The Appeals Council denied Plaintiff's request for review on July 23, 2020. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, Plaintiff argues that the ALJ erred in failing to obtain medical source statements from treating Nurse Practitioner Tiffany Thompkins, APRN, and from consultative examiner Jeffrey J. Ryan, M.D. For reasons discussed in this opinion, the Court finds that the ALJ did not commit reversible error and her decision is supported by substantial evidence.

## **DISCUSSION**

### A. **Standard of Review**

Judicial review of the Commissioner's final decision is authorized by the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the

3

Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). See also *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.  Five-Step Inquiry**

To recover SSI, a claimant must establish that he is disabled within the meaning of the Social Security Act. *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016). A claimant is disabled if he is unable to perform "any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves considering whether: "(1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). *See also Melvin J. v. Kijakazi*, No. 20 C 3284, 2022 WL 2952819, at *2 (N.D. Ill. July 26, 2022) (citing 20 C.F.R. § 416.920(a)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Butler*, 4 F.4th at 501.

**C. Analysis**

Plaintiff does not challenge most aspects of the ALJ's decision, including the identification of his severe and non-severe impairments, the RFC determination, the evaluation of the opinion evidence, the assessment of his subjective statements regarding his symptoms, or the reliance on the VE's testimony. All of these arguments have been waived. *Underwood v. Saul*, 805 F. App'x 403, 406 (7th Cir. 2020) (arguments not raised before the district court are waived). The only issue before the Court is whether the ALJ's failure to obtain medical source statements from Ms. Thompkins and Dr. Ryan constituted a violation of her duty to develop the record.

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). *See also* 20 C.F.R. § 416.912(a)(2) (the "case record must be complete and detailed enough to allow [the ALJ] to make a determination or decision about whether [the claimant is] disabled or blind."). That said, the obligation to develop the record "is not limitless." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "If an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017). *See also Charles F. v. Saul*, No. 18 C 618, 2019 WL 3776656, at *5 (N.D. Ill. Aug. 12, 2019) ("Taking 'complete record' literally would be a formula for paralysis because a claimant can always obtain more examinations and medical opinions."). Accordingly, a court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Nelms*, 553 F.3d at 1098. *See also Dashrath P. v. Saul*, No. 19 C 6769, 2020 WL 6781796, at *4 (N.D. Ill. Nov. 18, 2020). Any omission from the record "must be 'significant' – meaning, prejudicial – for the Court to determine that an ALJ abdicated his duty to develop the record." *Sylvester W. v. Kijakazi*, No. 19 C 4263, 2022 WL 1591622, at *3 (N.D. Ill. May 19, 2022) (quoting *Nelms*, 553 F.3d at 1098).

The ALJ discussed all of the medical and testimonial evidence of record in concluding that Plaintiff has the RFC for a reduced range of sedentary work. Following his left leg surgery in July 2013, Plaintiff spent approximately four years in prison. (R. 24). While there, he sometimes had an unassisted and steady gait (R. 311, 1/12/204; R. 391, 8/10/2017), and other times walked with a limp due to severe pain. (R. 290,

6

8/18/2015; R. 291, 8/25/2015). Prison records reflect that on August 25, 2015, Plaintiff complained of constant, throbbing pain in his left shin and leg at a level of 9/10. (R. 291). Plaintiff reported difficulty sleeping and walking due to the pain, which he said he "can't take" anymore. (*Id.*). During that visit, Plaintiff indicated that he had fallen a month earlier because of his leg but the incident was not reported or documented, and there is no evidence that Plaintiff was using an assistive device while incarcerated. (R. 24, 291).

On July 21, 2018, a couple months after the May 10, 2018 alleged disability onset date, Plaintiff had an internal Medicine Consultative Examination with Jeffrey J. Ryan, M.D. Plaintiff complained of constant daily pain in his left leg that left him unable to walk more than half a block and required use of a cane. (R. 434). On exam, Plaintiff had a significant scar extending from the mid lower leg to just above the knee. (R. 24, 435). The left knee was tender on palpation with 0 degrees of active range of motion and 40 degrees of flexion with the leg hanging over the bed. (*Id.*). The left ankle was also tender with 0 degrees of dorsiflexion and 0 degrees of plantar flexion. Plaintiff walked with an antalgic gait favoring his left leg and could not heel or toe walk, or squat or rise. Dr. Ryan noted severe difficulty with tandem gait and mild difficulty getting on and off the exam table. (*Id.*). X-rays of the left knee taken that day showed intact ORIF with anatomic alignment, but the bones appeared mildly "osteopenic" (reflecting density loss) and there was mild degenerative joint disease predominantly in the lateral compartment. (R. 24, 442). X-rays of the left ankle and left tibia-fibula showed no significant abnormalities. (R. 24, 443-44). Dr. Ryan assessed leg injury with significant tenderness and loss of range of motion in the left leg. (R. 436).

Five days later, on July 26, 2018, consultative reviewer Prasad Kareti, M.D. determined that Plaintiff can: occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; sit, stand and walk for 6 hours in an 8-hour workday; frequently push and pull with the left leg; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally balance, keel, crouch, and crawl; and frequently stoop. (R. 62). Plaintiff must also avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights, etc.). (R. 63). Vidya Madala, M.D. affirmed this RFC on October 4, 2018. (R. 72-74).

The first time Plaintiff sought leg treatment following his release from prison in early 2018 was on February 17, 2019 (nine months after the May 10, 2018 alleged disability onset date) when he went to the South Shore Hospital Emergency Department ("South Shore ED"). Plaintiff was ambulatory at that time but complained of left leg pain at a level of 9/10 that started in his leg and radiated to the hip, and said he could not put pressure on the leg. (R. 24, 492). On exam, Plaintiff was in mild distress and had limited range of motion and stiffness in the leg. (R. 494, 515). He also exhibited tenderness in the bone and soft tissue of the left leg, and in the soft tissue of the knee and ankle. (R. 515). X-rays of the left knee, tibia and fibula were similar to those obtained by Dr. Ryan, showing mild to moderate narrowing of the patellofemoral joint space and the medial and lateral knee joint compartments, patellar and osteoarthritic spurs, and mild to moderate degenerative changes, but no acute fractures or dislocations. (R. 24, 513, 514). Plaintiff was discharged in stable condition the same day with a prescription for tramadol. (R. 24, 494-95).

On February 28, 2019, Plaintiff started treating with Tiffany Thompkins, APRN for chronic pain and decreased mobility in the left leg. Once again, Plaintiff complained of pain from the ankle to the hip that was sharp and shooting at a level of 10/10. He reported that Norco and Xanax (medications given to him by a family member) helped alleviate the pain while tramadol did not. (R. 24, 450). Ms. Thompkins noted that Plaintiff was dragging his left foot, was unable to bend his left knee or hip, and was bearing weight on the right leg. (R. 24, 452). Ms. Thompkins assessed chronic pain due to injury, decreased mobility, and left leg pain. She referred Plaintiff for orthopedic and pain management consultations, and prescribed gabapentin and a cane. (R. 24, 453).

The following month, on March 28, 2019, Plaintiff saw Rena Beckerly, M.D. at the pain clinic. He reiterated that tramadol was no longer helping his chronic left leg pain, which he described as constant, shooting, and tingling from the left hip to the ankle at a level of 6-10/10. (R. 24, 458-59). Norco and Xanax, however, both helped. (*Id*.). On exam, Plaintiff walked with a cane and had an antalgic gait but there was no edema. (R. 24, 461, 462). Plaintiff demonstrated weakness throughout the left leg mostly related to pain, hyperalgesia (increased sensitivity to feeling pain), and allodynia (pain caused by a stimulus that does not normally provoke pain). He also had slightly reduced range of motion in the left leg, including 3/4 hip flexion, 4/5 knee extension, 4/5 knee flexion, 4/5 plantar flexion, 4/5 dorsiflexion, and 4/5 EHL (extensor hallucis longus). (R. 24, 462). Dr. Beckerly assessed neuropathic left leg pain, prescribed gabapentin and Lidocaine cream, ordered a lumbar MRI, referred Plaintiff for physical therapy ("PT"), and instructed him to return in 4 to 6 weeks. (R. 24, 462-63).

Plaintiff's next appointment for chronic leg pain was on April 3, 2019 with orthopedist Amir El Shami, M.D. Dr. El Shami noted an abnormal gait, left leg hyperalgesia, muscle atrophy, and severe tenderness to touch. An ultrasound showed severe osteoarthritis of the left knee. Dr. El Shami assessed chronic leg pain, ordered an MRI of the spine to rule out the possibility of a herniated disc, instructed Plaintiff to do PT, and suggested he return in 4 to 6 weeks. (R. 24, 472). When Plaintiff saw Ms. Thompkins on August 28, 2019, however, he reported that he never attended PT and did not return for pain management or orthopedic care after the first visits. Ms. Thompkins noted that Plaintiff provided no reason for failing to pursue treatment. (R. 24, 523). She once again assessed chronic leg pain but refused Plaintiff's request for Norco, stating that the drug was not indicated. (R. 24-25, 527). Though Ms. Thompkins referred Plaintiff back to orthopedics and the pain clinic, there is no evidence Plaintiff made or attended any such appointments. (R. 25, 527).

In determining Plaintiff's RFC, the ALJ considered the assessments from Drs. Kareti and Madala (the only physicians who opined on Plaintiff's functional limitations) and found them somewhat persuasive. Whereas both doctors determined that Plaintiff has the RFC to perform medium work, the ALJ limited him to sedentary work given records showing an antalgic gait, limping and dragging of the left leg at times, reduced range of motion in the left leg, and tenderness and allodynia in the left leg, as well as Plaintiff's own testimony about a need for a cane and difficulty walking and standing due to pain, which the ALJ gave "every benefit of full and fair consideration."[3] (R. 23, 25). At the same time, the ALJ adopted many of the state agency consultants' postural and

---

[3] As noted, Plaintiff does not challenge the ALJ's evaluation of his subjective symptoms.

environmental limitations. (R. 25). In such circumstances, there is no merit to Plaintiff's suggestion that the ALJ somehow rejected all opinions of record and created an evidentiary deficit that she improperly filled with her own opinion. (Doc. 18, at 14; Doc. 25, at 1). *See McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 881 (N.D. Ill. 2018) (finding no "evidentiary deficit" where the ALJ partially relied on state agency consultants' opinions but also incorporated additional limitations).

Also unavailing is Plaintiff's objection that the ALJ erred in relying on the state agency opinions in any respect because they were outdated. (Doc. 18, at 13-14; Doc. 25, at 2). "It is common for there to be a lag between the state agency physicians' reviews and the ALJ's decision, so the fact that new medical records came in after the state agency physicians conducted their reviews, is not, by itself, problematic." *Shelia M. v. Saul*, No. 20 C 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021) (citing *Keys*, 679 F. App'x at 481). "Rather, an outdated state agency problem occurs if there exists 'later evidence containing new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion.'" *Id*. (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018).

Here, Plaintiff does not claim he received any new medical diagnoses at all after Dr. Madala's October 4, 2018 assessment, much less ones that changed the picture so much that the ALJ erred in relying on the state agency opinions. *Compare Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (ALJ erred in relying on opinions from state agency consultants who did not have access to records showing that the plaintiff was diagnosed with major depressive disorder with psychotic features and bipolar disorder with psychotic features). As noted, the ALJ adopted the state agency opinions to the

11

extent they were not inconsistent with other medical and testimonial evidence. *See McReynolds*, 341 F. Supp. 3d at 880 ("[I]t is the role of the ALJ to resolve conflicts in the evidence and to formulate an appropriate RFC based on consideration of the entire record."); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians."). There is no dispute that the ALJ considered all pertinent evidence contained in the record, and Plaintiff does not point to any physician who found him to have more limitations than those set forth in the RFC. *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.").

Lacking record evidence showing that he has greater restrictions than those set forth by the ALJ, Plaintiff argues that the ALJ needed to secure additional opinions from two examining sources, Ms. Thompkins and Dr. Ryan. "An ALJ may recontact a medical source if she is unable to render a decision because the evidence is insufficient or inconsistent." *Chestine G. v. Saul*, No. 18 C 4980, 2020 WL 1157384, at *13 (N.D. Ill. Mar. 10, 2020). *See also* 20 C.F.R. § 416.920b(b). Plaintiff fails to identify any insufficiencies or inconsistencies in the record that needed resolving in order for the ALJ to render a decision. Instead, Plaintiff repeatedly states that the findings articulated in Ms. Thompkins' and Dr. Ryan's treatment notes were "consistent with" the imaging results, notes from South Shore ED, and examinations by Dr. Beckerly and Dr. El Shami. (Doc. 18, at 12-13). But the fact that the treatment notes were "consistent with" other evidence is not sufficient to demonstrate a significant and prejudicial omission from the record requiring remand. *Sylvester W.*, 2022 WL 1591622, at *3. Plaintiff himself

provides nothing more than mere speculation that opinions from Ms. Thompkins and Dr. Ryan "may have swayed the evidence in Plaintiff's favor, leading to a finding of disability" (Doc. 18, at 14), which is not a basis for remanding the case. *See Stewart v. Berryhill*, 731 F. App'x 509, 510 (7th Cir. 2018) ("Unsubstantiated claims are of course, no substitute for evidence.") (internal quotations omitted).

Significantly, Plaintiff has been represented by counsel throughout this case and his attorney never argued at the administrative level that the ALJ should contact Ms. Thompkins and Dr. Ryan for functional evaluations. Though counsel asked the ALJ to hold the record open for 14 days after the hearing to allow time to submit documents from Mile Square Health Center, she otherwise had no objections to the record or its contents. (R. 37-38). Plaintiff "does not explain why the ALJ should have investigated further after receiving this assurance and given that the ALJ may presume that represented claimants are presenting their strongest case." *Krug v. Saul*, 846 F. App'x 403, 406 (7th Cir. 2021) (citing *Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017)). *See also Migdalia M. v. Saul*, 414 F. Supp. 3d 1126, 1136-37 (N.D. Ill. 2019) (a claimant who is represented at the administrative hearing and thereafter "is presumed to have made her best case for benefits.").

Viewing the record as a whole, the ALJ did not err in failing to solicit opinions from Ms. Thompkins and Dr. Ryan regarding Plaintiff's functioning. As the Supreme Court has noted, "[s]ubstantial evidence is not a high hurdle to clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).

13

The ALJ's decision satisfies this threshold and Plaintiff's request to remand the case to obtain additional opinion evidence is denied.

## **CONCLUSION**

For reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is denied, and Defendant's Motion for Summary Judgment [23] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: August 12, 2022

_____
SHEILA FINNEGAN
United States Magistrate Judge

14